IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**WALTER D. MCLAURIN, CHARLES MAGEE,**
**ELBERT MCLAURIN and E.J. FLOWERS,**
**TRUSTEES OF FRIENDSHIP BAPTIST CHURCH**                        **PLAINTIFFS**

**V.**                                                       **CIVIL ACTION NO. 2:12cv235-KS-MTP**

**CHURCH MUTUAL INSURANCE COMPANY,**
**A FOREIGN INSURANCE CORPORATION**                               **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendant Church Mutual Insurance Company's ("Church Mutual") Motion for Partial Summary Judgment on Plaintiffs' Bad Faith Claim [48]. Having considered the filings of the parties, arguments of counsel at hearing, the record, and the applicable law, the Court finds that the motion should be denied.

## I.  BACKGROUND

This is a dispute over property insurance coverage for damage to a church roof. On or about September 1, 2009, Church Mutual issued Insurance Policy No. 0160951-21-106985 (the "Policy") [48-1] to Friendship Baptist Church ("Friendship Baptist"). Friendship Baptist is located at 27 Friendship Road, Collins, Mississippi, 39428 (the "Property" or "Insured Premises"). The Policy provides property coverage for the Insured Premises from September 1, 2009, to September 1, 2012.

On May 9, 2012, Friendship Baptist, by and through Trustee Charles Magee ("Trustee Magee"), reported a loss under the Policy. Friendship Baptist claimed that the interior ceiling sheetrock was water-stained, falling in, and cracking as a result of roof

damage caused by a windstorm. Also on May 9, Church Mutual retained Phillips & Associates, Inc. ("PAI"), a third-party adjuster, to assist in the adjustment of the claim and investigation of the loss.

Minnie Durfee, the PAI adjuster, inspected the Insured Premises on May 11, 2012. Trustee Magee and Sammy Davis, Friendship Baptist's contractor and the owner of Davis Building, Inc., attended the inspection. Ms. Durfee issued a written report to Church Mutual following her inspection. (*See* PAI Report [19-2].) The "CAUSE & ORIGIN" section of the report states:

> The loss appears to have occurred approximately 3 months ago when storms with tornado like winds came through the area. After these storms came through there was very little rain in the area until around 4/28/2012 when the insured noticed water stains on the ceiling in the Foyer and Sanctuary. Upon further inspection they found damage to the king poles in the attic. The damage was caused by windstorm which came through the area and appears to have lifted the roofing slightly causing the king poles to separate from the rafters in the attic over the Sanctuary.
>
> During our inspection we also found cracks in the sheetrock ceiling along the tape line throughout the Sanctuary. In addition there were two or three water stains to the ceiling in the Sanctuary and two stains to the ceiling in the Foyer/Entry.
>
> Inspection of the roofing on the exterior of this building found two areas along the east slope over the sanctuary where the shingles were pulled up and did not sit back down and seal properly. Photographs of the damages are attached for your review.

(PAI Report [19-2] at p. 2.) Ms. Durfee further provided that Mr. Davis presented a bid to complete the following repairs for $2,400.00: (1) repair all damaged trusses over the sanctuary; (2) install batting in the sanctuary over cracks in sheetrock; and (3) repair sheetrock in other places. Mr. Davis also advised Ms. Durfee that he had consulted

with a structural engineer regarding the best way to repair the trusses[1] in the attic.  It appears that neither Ms. Durfee nor Mr. Davis is an engineer.

On May 17, 2012, Friendship Baptist again contacted Church Mutual regarding its claim.  Trustee Magee reported that Friendship Baptist had retained an engineer to inspect the initial repairs and provide guidance as to the best method of completing the remaining, necessary repairs.  Trustee Magee also reported that the engineer advised that all of the roof trusses needed to be replaced.  The estimated cost of replacing all the trusses was $170,000.00.  In light of this information, Church Mutual hired an engineering firm, Donan Engineering, Inc. ("Donan"), to inspect the Property.

A representative of Donan, Charles C. Rutter (a licensed professional engineer), inspected the Insured Premises on May 31, 2012.  Mr. Rutter issued a written report regarding the inspection on June 11, 2012.  (*See* Donan Report [48-2].)  This report provides that the "purpose of the study was to determine the cause and origin of the truss separation."  (Donan Report [48-2 at ECF p. 2].)  Mr. Rutter observed visible cracks in the drywall of the church sanctuary and a broken beam in one of the scissor trusses.  He also found that a picture of one of the trusses, taken prior to stabilization efforts, showed "the separation of the trusses center web member from the upper chords . . . ."  (Donan Report [48-2 at ECF pp. 3-4].)  Mr. Rutter did not observe evidence of wind damage, such as uplifted shingles on the church roof or movement of

---

[1] In construction, a truss is a "rigid framework designed to support a structure." *Webster's II New College Dictionary* 1184 (2001).  The roof of the Insured Premises is supported by a series of scissor trusses composed of wood.  A scissor truss resembles the shape of a triangle, except that the base is angled upward (like the top) and is not a straight horizontal line.  Design drawings depicting the trusses are in the record.  (*See* Doc. Nos. [1-2 at ECF p. 11], [48-2 at ECF p. 4].)

a prefabricated metal carport on the north end of the Property. Mr. Rutter concluded that "[s]ufficient evidence is present to indicate the reported failure of the scissor truss." (Donan Report [48-2 at ECF p. 5].) He further determined:

> The failure of the scissor trusses above the church's sanctuary roof is not the result of a wind event. A detailed analysis of individual truss joints and knowledge of the proper design loads is necessary to determine if the failures are the result of a design error, a truss manufacturing error, or due to overloading.

(Donan Report [48-2 at ECF p. 6].)

On June 21, 2012, Church Mutual issued its preliminary denial of coverage and forwarded a copy of the Donan Report to Friendship Baptist. (*See* Doc. No. [48-3].) Church Mutual advised that no coverage existed for the claim in light of Donan's finding that the truss failure was not the result of a wind event, and the exclusion under the Policy for "loss or damage resulting from wear and tear, deterioration, settling, cracking, shrinking or expansion . . . ." (Doc. No. [48-3].) Notwithstanding its preliminary denial of coverage, Church Mutual retained Luckett & Farley, another engineering firm, to perform a truss analysis. This action was taken in light of the above-quoted recommendation in the Donan Report [48-2].

A representative of Luckett & Farley, Atul Mashruwala (a licensed professional engineer), issued a written report on August 22, 2012. (*See* L&F Report [48-4].) The report indicates that the scope of Luckett & Farley's work consisted of "[e]valuating the truss connection against applicable Building Code-prescribed minimum design loads to determine the adequacy to support such loads." (L&F Report [48-4] at p. 1.) The report concludes that "the connection between the truss plate and the vertical web member capacity is exceeded with the allowed design loads for code prescribed minimum

loading, therefore we cannot directly attribute this failure to an excessive wind event. It appears that the truss connection plate was undersized." (L&F Report [48-4] at p. 2.)

On September 4, 2012, Church Mutual notified Friendship Baptist of its final coverage determination. (*See* Doc. No. [48-6].) This notification advised of the findings in the L&F Report, and quoted the following Policy provisions in support of the determination that there was no coverage:

> **EXCLUSIONS (CONTINUED)**
>
> We will not pay for loss or damage caused by or resulting from any of the following 1. through 3. but if an excluded cause of loss that is listed in 1. through 3. results in a Covered Cause of Loss, we will pay for the loss or damage caused by the Covered Cause of Loss.
>
> . . . .
>
> 2. Acts or decisions, including the failure to act or decide, of any person, group, organization, or governmental body.
>
> 3. Faulty, inadequate, or defective:
>
> . . . .
>
> > b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
> >
> > c. Material used in repair, construction, renovation, or remodeling; or
> >
> > d. Maintenance;
> >
> > > of part or all of any property on or off the described premises.
>
> **ADDITIONAL EXCLUSIONS**
>
> We will not pay for loss or damage caused by or resulting from any of the following:

-5-

>       . . . .
>
>    4. a.   Wear and tear;
>
>       b.   Rust or other corrosion, decay, deterioration, hidden or latent defect, or any quality in property that causes it to damage or destroy itself;
>
>       . . . .
>
>       d.   Settling, cracking, shrinking, or expansion;
>
>       . . . .
>
>    12.   Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

(Policy [48-1 at ECF pp. 25-26].)

On November 9, 2012, the Trustees of Friendship Baptist (Walter D. McLaurin, Charles Magee, Elbert McLaurin, and E.J. Flowers) filed suit against Church Mutual in the Circuit Court of Covington County, Mississippi. (*See* Compl. [1-2 at ECF p. 6].) The Complaint alleges, *inter alia*, that the Policy provides coverage for damage to the Property caused by high winds, and that no Policy exclusion precludes coverage. Plaintiffs seek $212,970.00 in damages. This sum includes a $170,884.00 repair estimate from Davis Building.

On December 17, 2012, Church Mutual removed the proceeding to this Court on the basis of diversity of citizenship jurisdiction under Title 28 U.S.C. § 1332. (*See* Notice of Removal [1].) The Notice of Removal asserts that Church Mutual is a Wisconsin insurance company and that complete diversity exists between it and the Plaintiffs.

On April 10, 2013, Plaintiffs filed an Amended Complaint [15] against Church

Mutual.  This pleading adds a claim for bad faith denial of coverage.  Plaintiffs allege that Church Mutual's reliance on the L&F Report [48-4] and failure to pay the claim amount to an intentional tort, malicious conduct, or reckless disregard for the Plaintiffs' rights; that Church Mutual lacked an arguable good faith basis for denying Plaintiffs' claim; and, that it was reasonably foreseeable that Plaintiffs would suffer damages beyond the loss of proceeds under the Policy if Church Mutual denied the claim.  As a result, Plaintiffs seek punitive damages, attorneys' fees, and certain expenses.

On September 16, 2013, Church Mutual filed its Motion for Partial Summary Judgment on Plaintiffs' Bad Faith Claim [48].  Church Mutual argues that this claim should be dismissed because it had a legitimate and arguable basis to deny coverage.  Plaintiffs argue otherwise.  The Court has fully considered the parties' positions and is ready to rule.

## II.  DISCUSSION

### A.    Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted).  The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."  *Id.*  "'An issue is material if its resolution could affect the outcome of the action.'"  *Sierra Club, Inc. v.*

*Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."  *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is mandatory "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

**B.     Mississippi Law Regarding Bad Faith Insurance Claims**

Neither party disputes that Mississippi's substantive law applies in this diversity case involving a dispute over insurance coverage for property located in Mississippi. *Cf. Consol. Cos., Inc. v. Lexington Ins. Co.*, 616 F.3d 422, 425-26 (5th Cir. 2010) ("Because this diversity case involves 'the interpretation of insurance policies issued in

Louisiana for property located in Louisiana,' that state's substantive law controls.") (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)). However, the parties do appear to differ on the specific principles of Mississippi law controlling the determination of whether the Plaintiffs' bad faith claim may proceed to trial. Church Mutual argues that the entirety of Plaintiffs' claim (including their request for extra-contractual damages, punitive damages, and attorneys' fees) is defeated due to the existence of an arguable basis for the denial of coverage. Plaintiffs dispute that Church Mutual had an arguable basis for denying their claim, but also contend that the only issue before the Court is whether the denial of coverage was done maliciously or with reckless disregard of their rights.

The Court finds the Mississippi Supreme Court's recent decision in *Hoover v. United Services Automobile Association*, No. 2011-CA-01486-SCT, 2013 WL 5946161 (Miss. Nov. 7, 2013), to provide the controlling law. In *Hoover,* the Mississippi Supreme Court reviewed the trial court's grant of a directed verdict in favor of the defendant-insurer on the plaintiff-insureds' claims for emotional distress damages and punitive damages. 2013 WL 5946161, at *5 (¶¶ 21-22). As to the emotional distress claim, the court provided: "[e]xtracontractual damages, such as awards for emotional distress and [mental anguish] . . . are not warranted where the insurer can demonstrate an arguable, good-faith basis for denial of a claim." *Id.* at *4 (¶ 16) (citation and internal quotation marks omitted). The court further stated that "[i]n order to recover punitive damages, the Hoovers 'must show that [USAA] denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights.'" *Id.* at *5 (¶ 22) (quoting *Broussard v. State Farm Fire*

*& Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008)). No error was found in the trial court's determination that the insurer had an arguable basis for the denial of coverage. *Id.* at (¶¶ 21-22). Thus, the directed verdict on the insureds' emotional distress and punitive damages claims was affirmed. *Id.* at *7 (¶ 30). The Mississippi Supreme Court made no separate inquiry as to whether the insurer maliciously or recklessly disregarded the rights of the insureds.[2]

Plaintiffs contend that the Mississippi Supreme Court's decision in *Pursue Energy Corp. v. Abernathy*, 77 So. 3d 1094 (Miss. 2011), "clarifies and simplifies the current Mississippi legal standard for imposition of punitive damages for breach of contract . . . ." (Pls.' Brief Opposing Mot. for Part. SJ [53] at p. 2.) In *Pursue Energy*, the court stated that "in a breach-of-contract case, a plaintiff must prove that the breach was the result of an intentional wrong or that a defendant acted maliciously or with reckless disregard of the plaintiff's rights." 77 So. 3d at 1101 (¶ 23) (citing *Hamilton v. Hopkins*, 834 So. 2d 695, 703 (¶ 26) (Miss. 2003)). That *Pursue Energy* says nothing about an arguable basis for the denial of an insurance claim is unsurprising since there was no bad faith insurance cause of action before the court. *Pursue Energy* involved a dispute

---

[2] *Hoover* is in accord with other authorities (federal and state) providing that the existence of an arguable basis for the denial of insurance benefits precludes a claim for extra-contractual damages or punitive damages. *See, e.g., James v. State Farm Mut. Auto. Ins. Co.*, 719 F.3d 447, 453 (5th Cir. 2013) ("Because whether the insurer lacked a reasonably arguable basis for denying the claim is a threshold issue for a punitive damages claim, if a court decides as a matter of law that the insurer does have an arguable or legitimate basis for its denial, the plaintiff is entitled to neither compensatory nor punitive damages."); *United Servs. Auto. Ass'n v. Lisanby*, 47 So. 3d 1172, 1175 (¶ 1), 1179, (¶ 24), 1185 (¶ 55) (Miss. 2010) (holding that the trial court erred in allowing the jury to consider extra-contractual damages for emotional distress and attorneys' fees since the insurer had an arguable basis for denying the claim, which also mooted the plaintiffs' cross-appeal regarding the denial of punitive damages).

between mineral lessors and a mineral lessee, where a fiduciary relationship existed between the parties, over royalty payments. *Id.* at 1100-01 (¶¶ 22-27). It is well settled under Mississippi law that fiduciary duties do not exist between an insurer and an insured in the context of a first-party insurance contract, such as the contract between Church Mutual and Friendship Baptist. *See, e.g.*, *Robley v. Blue Cross/Blue Shield of Miss.*, 935 So. 2d 990, 995-96 (¶ 14) (Miss. 2006); *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1049-50 (¶ 12) (Miss. Ct. App. 2007). As a result, *Pursue Energy* is clearly distinguishable and fails to dispose of the "arguable basis" consideration in the context of the bad faith insurance claim before the Court. Whether or not Church Mutual maliciously or recklessly disregarded Plaintiffs' rights only becomes a live issue if the Plaintiffs show that Church Mutual "denied the claim (1) without an arguable or legitimate basis, either in fact or law . . . ." *Hoover*, 2013 WL 5946161, at *5 (¶ 22).[3]

The Mississippi Supreme Court has defined an arguable reason "as 'nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to [the] heightened level of an independent tort.'" *Windmon v. Marshall*, 926 So. 2d 867, 873 (¶ 24) (Miss. 2006) (quoting *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992)). An insurer "'need only show that it had reasonable justifications, either in

---

[3] The Mississippi Supreme Court has previously held that in certain "extreme factual situations" the issue of punitive damages may go to the jury notwithstanding the existence of an arguable basis. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1186, 1190 (Miss. 1990) (determining that the record evinced acts of fraud and the attempted use of the insured's financial straits to force a settlement) (citation omitted); *see also Lewis v. Equity Nat'l Life Ins. Co.*, 637 So. 2d 183, 185-86 (Miss. 1994) (finding merit in the plaintiff-insured's claims that the insurer engaged in post-claim underwriting and that the insurer's agent misrepresented information in a policy application). The Court finds no evidence of any similar "extreme factual situations" presented by the Plaintiffs in this case.

fact or in law, to deny payment.'" *Broussard*, 523 F.3d at 628 (quoting *U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992)). Even if an exclusion or defense does not ultimately bar coverage, it can still constitute an arguable basis. *Sobley v. S. Natural Gas Co.*, 302 F.3d 325, 341 (5th Cir. 2002). The determination of whether an arguable basis exists for the denial of coverage "is an issue of law for the court." *Broussard*, 523 F.3d at 628. Nonetheless, if "'the trial court determines that as a matter of law it cannot hold that the insurer had a legitimate and arguable defensive position, but that the evidence constituted disputed facts as to whether or not such situation existed, then the trial court should submit that issue to the jury.'" *Kendrick v. Miss. Farm Bureau Ins.*, 996 So. 2d 132, 135 (¶ 15) (Miss. Ct. App. 2008) (quoting *Reserve Life Ins. Co. v. McGee*, 444 So. 2d 803, 809 (Miss. 1983)).

**C. Analysis**

Church Mutual argues that the Donan Report [48-2] and the L&F Report [48-4] gave it a legitimate and arguable basis to deny Friendship Baptist's claim. According to Church Mutual, it relied on these engineering opinions for its decision to deny coverage based on the Policy [48-1] exclusion for "[f]aulty, inadequate, or defective . . . [d]esign, specifications, workmanship, repair, construction, . . . [m]aterials used in repair, construction, renovation or remodeling." (Def.'s Brief in Supp. of Mot. for Part. SJ [49] at p. 9.) Numerous authorities have held that insurers may properly rely on the findings of adjusters, investigators, or other professionals in denying claims.[4] Plaintiffs do not

---

[4] *See, e.g., Broussard*, 523 F.3d at 628 ("State Farm had an arguable basis for denying the[] claim based on the observations of its adjuster . . . ."); *Burley v. Homeowners Warranty Corp.*, 773 F. Supp. 844, 855-56 (S.D. Miss. 1990) (holding that an engineer's opinion furnished an arguable reason for the denial of a claim), *aff'd*, 936

appear to question this point of law. Instead, Plaintiffs dispute the merits of the Donan and L&F Reports, and further contend that the jury should decide if Church Mutual's "flip-flopping" on whether this is a wind damage claim constitutes bad faith.

Viewing the summary judgment record and the resulting inferences in the Plaintiffs' favor, the Court finds that fact issues exist that preclude it from holding as a matter of law at this time that Church Mutual had an arguable basis to deny coverage. First, the PAI adjuster that initially inspected the Insured Premises reported to Church Mutual that "[t]he damage was caused by windstorm which came through the area and appears to have lifted the roofing slightly causing the king poles to separate from the rafters in the attic over the Sanctuary." (PAI Report [19-2] at p. 2.) The adjuster also "found two areas along the east slope over the sanctuary where the shingles were pulled up and did not sit back down and seal properly." (PAI Report [19-2] at p. 2.) Church Mutual's Rule 30(b)(6) Representative, Lynn E. Renlund, initially testified at deposition that based on the PAI Report, Friendship Baptist had been paid $4,000 "for some minor damages that they sustained" to "a couple of shingles that were lifted . . . [and] some interior water damage . . . related to it" under the "wind" portion of the Policy. (Renlund Dep. [54-5] at pp. 15-16.) Ms. Renlund later clarified that she was unable to confirm whether or not the claim file showed any payment to Friendship Baptist. (*See* Renlund Dep. [55-1] at pp. 52-53.) The record in this case establishes that Church

---

F.2d 569 (5th Cir. 1991); *Sutton v. N. Ins. Co. of N.Y.*, 681 F. Supp. 1221, 1222-23 (S.D. Miss. 1988) (granting the insurer's motion for partial summary judgment on the plaintiff's claim for punitive damages where a fire investigator concluded that a fire at the insured premises had been intentionally set); *Hoover*, 2013 WL 5946161, at *5 (¶ 21) (finding that the insurer's reliance on an engineering report and the investigation of its adjusters supported the trial court's "arguable basis" ruling in favor of the insurer).

Mutual has not made any payment to Friendship Baptist under the Policy. Also, Church Mutual clearly advised Friendship Baptist on June 21 and September 4, 2012, that there was no coverage for the claim. Ms. Renlund's confusion about whether or not a payment had been made does not change these facts. Nonetheless, her testimony does give rise to a genuine issue as to whether Church Mutual legitimately withheld payment for at least a portion of the claim based on the PAI adjuster's initial finding of wind damage. *Cf. James*, 719 F.3d at 454 (holding that the defendant-insurer had no legitimate or arguable basis for delaying payment for approximately thirteen months out of a total thirty-month period of time); *Broussard*, 523 F.3d at 629 (finding that the defendant-insurer lacked an arguable reason for denying a "portion of the" plaintiffs' claim since its expert opined that some damage was due to wind).

      Second, there is a discrepancy between the PAI adjuster's report of "pulled up" shingles on two areas of the church roof, and the statement in the Donan Report [48-2] that "[n]o uplifted or wind damaged (missing, creased, or torn) shingles are present on the church roof". This discrepancy may be the result of the shingles being repaired between the time of the PAI adjuster's inspection on May 11, 2012, and the inspection of the Donan engineer on May 31, 2012. (*See* Donan Report [48-2 at ECF p. 6]) ("[P]revious stabilization and repair activities restrict the observation of the reported points of failure."). Conversely, the Donan engineer may have simply overlooked the shingles referenced by the PAI adjuster. In either event, the discrepancy is material since it appears that the Donan engineer concluded the "truss failure is not the result of a wind event" due to the absence of "collateral evidence of wind damage or uplift . . . to

the weak non-structural components of the church",[5] and since Church Mutual specifically referenced these findings in its June 21, 2012 denial of coverage. (*See* Doc. No. [48-3].)[6] It is also questionable whether the Donan Report [48-2] supports the Policy exclusion referenced in the June 21 denial for "loss or damage resulting from wear and tear, deterioration, settling, cracking, shrinking or expansion . . . ." (Doc. No. [48-3].) The report concluded that a truss analysis was required "to determine *if the failures* are the result of a design error, a truss manufacturing error, or due to overloading." (Donan Report [48-2 at ECF p. 6]) (emphasis added).

Lastly, the L&F Report [48-4] may be reasonably construed to leave open the possibility that wind played some part in the truss failure. The L&F Report contains a chart specifying certain design loads for the roof of the Insured Premises, such as the dead load, roof live load, and wind load. The report also provides that "the allowable capacity of the [truss] plate connection is approximately **728 lbs.**" (L&F Report [48-4] at p. 2.) Based on this figure and a dead load figure of 470 pounds, Plaintiffs assert that the truss capacity was 258 pounds (728-470=258) more than the dead load alone. Plaintiffs further contend that this calculation and the conclusion in the L&F Report that "we cannot directly attribute this failure to an *excessive* wind event"[7] indicate that the

---

[5] (Donan Report [48-2 at ECF pp. 6, 7].)

[6] The Court is not suggesting that the findings of an adjuster carry more weight than the conclusions of a professional engineer. The Court is merely noting the existence of facts and circumstances relevant to the legitimacy of Church Mutual's reasons for denying coverage. In any event, identifying uplifted or displaced shingles would not seem to be a task requiring a degree in engineering.

[7] (L&F Report [48-4] at p. 2) (emphasis added).

trusses did not fail of their own weight and that some degree of wind caused the failure. Plaintiffs' assertions are not so speculative or improbable as to require their rejection at this stage of the proceedings.

      The Court is cognizant of the L&F Report describing the truss connection plate as "undersized" and providing that "the connection between the truss plate and the vertical web member capacity is exceeded with the allowed design loads for code prescribed minimum loading . . . ." (L&F Report [48-4] at p. 2.)  These findings arguably implicate the Policy exclusion referenced in Church Mutual's September 4, 2012 denial of coverage for damage caused by "faulty, inadequate, or defective . . . [d]esign, specifications, workmanship, . . . construction, . . . [or] [m]aterials used in . . . construction . . . ." (Doc. No. [48-6].)  However, the following deposition testimony from Ms. Renlund calls into question the applicability of the preceding exclusion if wind and faulty design combine to cause damage:

> Q. Is there any specific requirement in the policy about it being built to any particular building code?
>
> A. No.
>
> Q. If -- if wind caused damage to something that was not built to a particular building code, then is that covered under the policy?
>
> A. Yes.
>
>     . . . .
>
> Q. And I think we've established this before that the policy doesn't require any sort of specific speed wind to be covered; is that right?
>
> A. Correct.

(Renlund Dep. [54-5] at pp. 26, 59.)

The Court recognizes that the "existence of a viable dispute" between the parties as to coverage does not preclude a summary judgment ruling in favor of an insurer on the "arguable basis" determination. *Hood v. Sears Roebuck & Co.*, 532 F. Supp. 2d 795, 803 (S.D. Miss. 2005) (citation omitted), *aff'd*, *Hood v. Tinta*, 247 Fed. Appx. 531 (5th Cir. 2007). Yet, most of the above-discussed fact issues, which must be construed in the Plaintiffs' favor, appear to arise from Church Mutual's own claim file. The Court is unable to issue a definitive summary judgment ruling that Church Mutual possessed an arguable or legitimate basis to deny coverage under this set of circumstances.[8] This does not mean, however, that the jury will be given an extra-contractual damages instruction. *See Richards v. Amerisure Ins. Co.*, 935 F. Supp. 863, 867 (S.D. Miss. 1996) ("[U]nless the insured would be entitled to a directed verdict on the underlying insurance claim, an arguable reason to deny an insurance claim exists in most instances.") (citing *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 873 (5th Cir. 1991)).

The matter of punitive damages is also not yet ripe for determination. Neither party has adequately briefed the issue of whether Church Mutual can be considered to have denied the subject claim "with malice or gross negligence in disregard of the insured's rights." *Hoover*, 2013 WL 5946161, at *5 (¶ 22). Further, an award of compensatory damages is a prerequisite to the jury being allowed to consider punitive

---

[8] *Cf. Rosamond v. Great. Am. Ins. Co.*, No. 3:10cv263, 2011 WL 4433582, at *2 (S.D. Miss. Aug. 4, 2011) (finding that the summary judgment record failed to permit a ruling that the defendant-insurer possessed an arguable basis for denying a claim as a matter of law); *Flores v. State Farm Fire & Cas. Co.*, No. 1:08cv471, 2010 WL 2757541, at *1-2 (S.D. Miss. July 12, 2010) (same); *Butcher v. Allstate Ins. Co.*, No. 1:06cv423, 2009 WL 261826, at *5 (S.D. Miss. Feb. 4, 2009) (same).

damages under Mississippi law. See Miss. Code Ann. § 11-1-65(1)(c). The Court will be in a better position to determine whether the jury should be allowed to consider punitive damages or extra-contractual damages via Plaintiffs' bad faith claim after it has heard testimony and viewed documentary evidence at trial.

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Church Mutual's Motion for Partial Summary Judgment on Plaintiffs' Bad Faith Claim [48] is denied.

SO ORDERED AND ADJUDGED this the 20th day of December, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE